1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   MEDIA QUEUE, LLC                           No. C 09-1027 SI
9              Plaintiff,                      **CLAIM CONSTRUCTION ORDER AND
                                               ORDER GRANTING DEFENDANTS'**
10   v.                                        **MOTIONS FOR SUMMARY JUDGMENT**
11   NETFLIX, INC., *et al.*
12              Defendants.
                                    /
13

14          On November 17, 2009, the Court held a claim construction hearing and heard oral argument

15   on the defendants' motions for summary judgment.  Having carefully considered the arguments of

16   counsel and the papers submitted, and for good cause shown, the Court hereby adopts the constructions

17   set forth below, and GRANTS defendants' motions for summary judgment.

18

19                              **BACKGROUND**

20          Plaintiff, Media Queue, LLC ("Plaintiff") is a recently established Oklahoma Limited Liability

21   Corporation that owns U.S. Patent No. 7,389,243 ('243 patent), the patent-in-suit, entitled "Notification

22   system and method for media queue."[1]  The '243 patent was filed on February 2, 2004 (based on a

23   _____

24          [1] Defendants allege that Media Queue, LLC acquired the '243 patent from John Gross, the
     named inventor and prosecuting attorney for the patent, solely for the purpose of litigating this action.
25   The records indicate that John Gross had interacted with Netflix during prosecution of the patent
     application that eventually led to the issuance of the '243 patent.  Mr. Gross contacted Netflix to
26   negotiate an acquisition deal for his patent application.  The communications between the two parties
     include Netflix's letter to Mr. Gross, which was submitted in an Information Disclosure Statement to
27   the United States Patent and Trademark Office (USPTO).  The letter alleges that the claims of Mr.
     Gross's patent application were anticipated by Netflix's prior use.  June 7, 2007 IDS Submission,
28   Newton Decl., Ex. C (Docket No. 161-3).  After failing to reach an agreement with Netflix, Mr. Gross
     sold his patent rights to plaintiff.

provisional application dated January 31, 2003) and was issued on June 17, 2008. The '243 patent discloses a notification system method "for alerting subscribers to a status of their rental queues" by providing "a number of components that interoperate to improve a subscriber's experience, including an intelligent queue monitor which works on his/her behalf to ensure that an adequate and interesting list of titles are brought to the attention of subscribers." '243 patent, Abstract, Chivvis Decl., Ex. A (Docket No. 171-2).

Defendants Netflix and Blockbuster ("Defendants") are operators of subscription-based online movie rental services that provide DVD rental services to users enrolled in a subscription plan that allows them to "check out" a certain number of DVDs at a time. Users may choose movies to be shipped by visiting the service provider's website and selecting titles that the user would like to receive. The selected movies are added to the subscriber's rental queue. The rental queue maintains the subscriber's movie choices so that the subscriber need not log onto the website to receive a new movie. Once the subscriber returns a movie, the service provider sends the subscriber the next available title from the subscriber's rental queue. Netflix began offering this subscription-based online movie rental plan in the fall of 1999. W. Reed Hastings, Marc B. Randolph, and Neil Duncan Hunt, who conceived of this new online system for providing media rental services, applied for a patent on this innovation on April 28, 2000, naming Netflix as the assignee. The patent was granted on June 24, 2003 as U.S. Patent No. 6,584,450 ("Hastings"), entitled "Method and Apparatus for Renting Items." Hastings, Chivvis Decl., Ex. B (Docket No. 171-3).

The '243 patent describes Netflix's online rental service system as prior art and claims certain improvements to Netflix's system. Specifically, the '243 patent acknowledges that Netflix permits users to engage in "an interactive online session" in which the user "select[s] a number of titles, and then prioritize[s] them in a desired order for shipment within the selection queue." 1:29-32. The '243 patent also acknowledges that Netflix's system can make recommendations for titles to a user during such online session. 1:34-36. The '243 patent notes that Netflix's system is limited in that it fails to notify the subscriber of the status of its rental queue when the rental queue is empty, near empty, or perhaps, contains less desirable selections, 2:1-6; does not give subscribers any flexible degree of control over their rental selection queue or shipments, 2:19-26; and does not actively monitor the subscriber rental

2

United States District Court
For the Northern District of California

queue when the subscriber is logged off.  2:42-49.  Accordingly, the '243 patent claims an "intelligent queue monitoring" system that purports to overcome these limitations.

On October 24, 2008, plaintiff filed suit against defendants for patent infringement in the Eastern District of Oklahoma.[2]  The lawsuit was then transferred to this Court on February 24, 2009.  Plaintiff alleges that certain features of defendants' systems infringe claims 13, 16, 18-23, 25 and 26 of its patent.  Now before the Court is the parties' claim construction, Netflix's motion for summary judgment of noninfringement, and Blockbuster's motion for summary judgment of noninfringement.

## LEGAL STANDARD

"Patent infringement is a two step inquiry.  First, the court must construe the asserted claim. . . . Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by a substantial equivalent."  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005) (internal citation omitted).  While the first step is a question of law, the second is a question of fact.  *Id.*

## I.   Claim Construction

Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  Terms contained in claims are "generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation omitted).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]"  *Id.* at 1313.  In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history.  *Id.* at 1313; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996).  "The appropriate starting point . . . is always

---

[2] Plaintiff originally named five defendants, Netflix, Inc., Blockbuster, Inc., GameFly, Inc., Greencine, LLC, and Greencine Holdings, LLC.  Claims against GameFly, Inc. were subsequently dismissed with prejudice, and claims against Greencine, LLC were dismissed without prejudice. Greencine Holdings joined defendants Netflix and Blockbuster in filing the Joint Claim Construction Statement (Docket No. 159) but did not join defendants in filing the Joint Opposition Claim Construction Brief (Docket No. 169).

1    with the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d

2    1182, 1186 (Fed. Cir. 1998); *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir.

3    1997).

4         Although claims are interpreted in light of the specification, this "does not mean that everything

5    expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d

6    951, 957 (Fed. Cir. 1983).  For instance, limitations from a preferred embodiment described in the

7    specification generally should not be read into the claim language.  *See Comark*, 156 F.3d at 1186.

8    However, it is a fundamental rule that "claims must be construed so as to be consistent with the

9    specification." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)

10   (cited with approval by *Phillips*, 415 F.3d at 1316).  Therefore, if the specification reveals an intentional

11   disclaimer or disavowal of claim scope, the claims must be read consistent with that limitation. *Phillips*,

12   415 F.3d at 1316.

13        Finally, the Court may consider the prosecution history of the patent, if in evidence.  The

14   prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was

15   disclaimed during prosecution.  *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.

16   Cir.1995).  In most situations, analysis of this intrinsic evidence alone will resolve claim construction

17   disputes.  *See Vitronics*, 90 F.3d at 1583.  Extrinsic evidence "consists of all evidence external to the

18   patent and prosecution history, including expert and inventor testimony, dictionaries, and learned

19   treatises." *Phillips*, 415 F.3d at 1317.  Courts should not rely on extrinsic evidence in claim construction

20   to contradict the meaning of claims discernable from examination of the claims, the written description,

21   and the prosecution history.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed.

22   Cir.1999) (citing *Vitronics*, 90 F.3d at 1583).  However, it is entirely appropriate "for a court to consult

23   trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file

24   is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the

25   pertinent technical field." *Id*.

26

27   **II.    Summary Judgment**

28        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

4

**United States District Court**
For the Northern District of California

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc., v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party") (internal quotations omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Summary judgment can be used to determine both infringement and noninfringement. *Avia Group Intern., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). The moving party bears the burden of proving infringement or noninfringement by a preponderance of the evidence. *Mannesmann Demag Corp. v. Engineered Metal Products, Inc.*, 793 F.2d 1279, 1282 (Fed Cir. 1986).

United States District Court
For the Northern District of California

1    To establish infringement, every limitation in a claim as construed by the Court must be in the

2    accused product, either exactly or by a substantial equivalent.  *Carroll Touch, Inc. v. Electro*

3    *Mechanical Systems*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).  A claim is literally infringed if the accused

4    product is exactly the same as each element of the asserted claim.  *Hi-Life Products, Inc. v. American*

5    *National Water-Mattress Corp.*, 842 F.2d 323, 325 (Fed. Cir. 1986).  Even if a product does not literally

6    infringe it may infringe under the doctrine of equivalents.  *See Warner-Jenkinson Co. v. Hilton Davis*

7    *Chemical Co.*, 520 U.S. 17, 21 (1997).  "A claim element is equivalently present in an accused device

8    if only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects

9    of the accused device."  *Sage Prods., Inc. v. Devon Indus. Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997).

10    Although the determination of patent infringement is a fact-intensive process, "comparison of

11    a properly interpreted claim with a stipulated or uncontested description of an accused device or process

12    would reflect such an absence of material fact issue as to warrant summary judgment of infringement

13    or noninfringement." *D.M.I. Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed. Cir. 1985).

15                                    **DISCUSSION**

16    **I.    Claims at issue in the '243 patent**

17    Plaintiff alleges that certain features of defendants' systems infringe claims 13, 16, 18-23, 25

18    and 26 of the '243 patent.  The parties dispute the meaning of three claim terms recited in independent

19    claims 13 and 23.[3]  The claims at issue read as follows, with the disputed terms in bold.

20        13. A method of electronically notifying a subscriber to a content provider of
       activity in a subscriber rental queue associated with the subscriber, including the steps

21     of:
           a. defining **a set of notification rules** for the subscriber rental queue, which

22     notification rules are **authorized by the subscriber**;
           b. monitoring the subscriber rental queue with a computer in accordance with

23     said set of notification rules and **a separate set of queue replenishment control rules
       authorized by the subscriber** so that said computer can determine if a composition of

24     such rental queue should be altered through additions of playable media titles and/or
       ordering of playable media titles in the subscriber rental queue should be altered;

26        [3] The parties initially asked the Court to construe eight disputed claim terms.  However, the
    parties agreed during oral argument that the Court need only construe the three claim terms, "a set of

27    notification rules," "a separate set of queue replenishment control rules," and "authorized by the user,"
    if the construction of these terms would be dispositive of the issue of noninfringement raised in

28    defendants' motions.

wherein said queue replenishment control rules include a trigger event to be used in determining when said subscriber rental queue should be modified, and said trigger event is based on a quantity of playable media items remaining in the subscriber rental queue;

c. providing a recommender system configured to provide recommendations for playable media titles;

d. sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said set of notification rules;

e. causing said recommender system to interact with the subscriber and provide a playable media title recommendation in response to user input provided within a response to said electronic notification;

f. adding a playable media title recommendation to said subscriber rental queue in response to subscriber input to said recommender system.

16. The method of claim 13, wherein said trigger event is based on said quantity of playable media items being equal to zero indicating that said subscriber rental queue is empty.

18. The method of claim 13, wherein said electronic notification includes information indicating said quantity of playable media items remaining in the subscriber rental queue.

19. The method of claim 13, wherein said electronic notification further provides recommendations on newly released playable media items for said subscriber.

20. The method of claim 13, wherein said electronic notification further provides recommendations on playable media items based on genre selections made by said subscriber.

21. The method of claim 13, wherein additional electronic notifications are sent until said subscriber replenishes said subscriber rental queue to contain a quantity of playable media items exceeding a specified threshold.

22. The method of claim 13 wherein said electronic notification includes an embedded uniform resource locator (URL) or an electronic response field associated with a first playable media item which when selected by said subscriber causes said playable media item to be moved to said subscriber rental queue.

23. A method of electronically notifying a subscriber to a content provider of activity in a subscriber rental queue associated with the subscriber, including the steps of:

a) defining **a set of notification rules** for the subscriber rental queue, which notification rules are **authorized by the subscriber**;

b) monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and **a separate set of queue replenishment control rules authorized by the subscriber** so that said computer can determine if a composition and/or ordering of playable media titles in the subscriber rental queue should be altered;

c) sending an electronic notification to the subscriber with said computer in response to an affirmative determination under step (b) that such notification is necessary based on said set of notification rules;

wherein said notification provides directions for the subscriber to accept and/or modify any proposed alterations of the subscriber rental queue;

further comprising said subscriber accepting and/or modifying said proposed alteration based on said directions.

United States District Court
For the Northern District of California

1

2

 25. The method of claim 23, further including a second electronic notification to the subscriber which confirms any subscriber action taken in response to said electronic notification.

3

 26. The method of claim 23 wherein said notification further includes an embedded uniform resource locator (URL) or an electronic response field to solicit a feedback rating from the subscriber for a playable media title identified in said notification.

4

5

6

'243 patent, 27:15-28:35.

7

8

## II. Disputed claim terms in the '243 patent

9

### A. "A set of notification rules"

10

Independent claims 13 and 23 both recite a step of "defining a set of notification rules for the

11

subscriber rental queue."  Plaintiff contends that the term "a set of notification rules" should simply be

12

construed as "a set of rules *relating to* notifications sent to the subscriber."  Defendants contend that this

13

term is indefinite and cannot be construed, or alternatively, to the extent that the term is amenable to

14

construction, it should be construed to mean  "a set of rules *governing the transmittal and content of*

15

notifications *about queue status* sent to the subscriber."

16

17

### 1. Indefiniteness

18

A patent specification must "conclude with one or more claims particularly pointing out and

19

distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112.

20

"[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the

21

invention using language that adequately notifies the public of the patentee's right to exclude."

22

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citation omitted).  The

23

definiteness requirement "does not compel absolute clarity.  Only claims not amenable to construction

24

or insolubly ambiguous are indefinite."  *Id.* (citation omitted).  "Thus, the definiteness of claim terms

25

depends on whether those terms can be given any reasonable meaning."  *Id.*  "If the meaning of the

26

claim is discernible, even though the task may be formidable and the conclusion may be one over which

27

reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on

28

indefiniteness grounds."  *Exxon Research & Engineering Co. v. United States*, 265 F.3d 1371, 1375

8

(Fed Cir. 2001). "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Id*.; *see also Halliburton Energy Services, Inc. v. M-1 LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008) (holding that an accused infringer must show by clear and convincing evidence that "a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification and the prosecution history, as well as her knowledge of the relevant art area").

The Court finds that defendants have not met their burden of providing clear and convincing evidence that the term "a set of notification rules" is not amenable to construction or is insolubly ambiguous. Defendants argue that while the asserted claims describe "notification rules" and "replenishment control rules" as separate sets of rules, the specification fails to define the scope of these terms so that it is impossible, even for one of ordinary skill in the art, to discern which features described in the specification correspond to "notification rules" and "queue replenishment control rules." Defendants note that the "queue control options," "threshold options," "notification options," "queue monitoring parameters," "queue replenishment parameters," and "queue management options" recited in the detailed description ('234 patent, 6:41-65, 8:27-36, 9:34-64, 10:41-11:7) appear to be related to the "notification rules" and the "queue replenishment control rules" of the claims. However, defendants contend that the specification fails to distinguish the various "options" and "parameters" associated with "notification rules" from those associated with "queue replenishment control rules" so that the specification confuses rather than clarifies the meaning of these terms. For example, defendants point out that in Figure 2 of the '243 patent, while the user interface screen 230, showing various notification options that can be selected by a user, appears to correspond to "notification rules," the option "No notice–autoship" does not relate to "notification rules" and instead relates to "queue replenishment control rules" because under this option, a queue would be automatically replenished without any notification to the user. Thus, defendants argue that the specification does not provide any guidance for a person skilled in the art to discern the respective boundaries of "a set of notification rules" and "a separate set of queue replenishment control rules."

Plaintiff argues that one of ordinary skill in the art will be able to understand from the

**United States District Court**
For the Northern District of California

description of user options and parameters displayed on the user interface screens of Figure 2, the underlying notification rules and queue replenishment control rules defined by the system operator. Plaintiff specifically notes that although the interface screen 230 with the notification options may relate to both notification rules and queue replenishment control rules depending on the option selected, one of ordinary skill in the art can easily distinguish the underlying notification rules and the queue replenishment control rules based on the notification options.  For example, if the option "No notice–autoship" is selected, the notification rule will be to send no notice, and the queue replenishment control rule will be to select and add a new title to the corresponding subscriber queue.  Although the drafting of the '243 patent has been less than ideal and the task of construing the claim terms may be formidable, defendants have not provided clear and convincing evidence that the claim terms are insolubly ambiguous.  In other words, reasonable efforts at claim construction would not prove futile and one of ordinary skill in the art would be able to discern the boundaries of what is being claimed based on the claim language, the specification, the prosecution history, and his or her knowledge of the relevant art.  Accordingly, the Court finds that the term "a set of notification rules" is amenable to construction.

## 2.     Claim Construction

As for the construction of the claim term, plaintiff proposes that "a set of notification rules" be construed to mean "a set of rules *relating to* notifications sent to the subscriber," whereas defendants propose that it be construed to mean "a set of rules *governing the transmittal and content of* notifications *about queue status* sent to the subscriber."  Plaintiff argues that defendants are attempting to unnecessarily narrow the scope of the asserted claims by adding extraneous limitations that the notification rules (1) govern the transmittal of notifications, (2) govern the content of notifications, and (3) require the notifications to be about queue status.  Plaintiff contends that the notification rules need not necessarily "govern" the transmittal *and* the content of the notification.  Plaintiff explains that the notification rules may simply "relate to" whether or when to send a notification, the type of notification to be sent, *or* the content of the notification.  In sum, plaintiff argues that the definition of "a set of notification rules" should not be limited by any language that is not explicitly recited in the asserted

10

United States District Court
For the Northern District of California

1   claims.

2       Defendants contend that construing "a set of notification rules" as "a set of rules *relating to*

3   notifications sent to the subscriber" will obscure the difference between notification rules and queue

4   replenishment control rules because virtually all aspects of media queue rental systems have some

5   relation to notifications.  First, defendants point out that the term "rule" is commonly defined as "a

6   prescribed guide for conduct or action."[4]  Thus, the notification rules must do more than "relate to"

7   notifications, and must actually "govern" the notifications sent to the subscriber.  Defendants argue that

8   such construction is fully supported by the specification.  Specifically, defendants note that the detailed

9   description recites that "the subscriber identifies specifically what type of policies/rules should be

10  employed–i.e., what notice and action should be sent to him/her." '243 patent, 15:41-44.  Defendants

11  also note that both claims 13 and 23 require that the notification rules be used to determine when it is

12  necessary to send a notification.  *Id.* 27:36-39, 28:26-29.

13      Second, defendants argue that the notification rules must govern notifications about the status

14  of the subscriber's queue, not just any notification.  Defendants assert that construing the notification

15  rules as otherwise would be inconsistent with the claim language and the descriptions in the

16  specification.  Particularly, defendants note that both claims 13 and 23 recite in their preambles "[a]

17  method of electronically notifying a subscriber to a content provider of activity in a subscriber rental

18  queue associated with the subscriber,"[5] and further specify in the claim body that the notification rules

19  are "for the subscriber rental queue" and are used to "monitor the subscriber's queue." *Id.* 27:15-19,

20  28:14-18.  Defendants also note that the summary of the invention states one of its objectives as

21  providing "a notification system that alerts and informs subscribers/purchasers of the status of items in

22

23      [4] Defendants cite the Merriam Webster Collegiate Dictionary, 11th Ed.  Chivvis Decl., Ex. D

24  (Docket No. 169-5).  Plaintiffs counter defendants' argument by pointing out that this dictionary also
    defines the term "rule" as a "guide," "procedure,"or "generalization."

25      [5] Plaintiff relies on *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed.

26  Cir. 2008), to argue that generally, a preamble of a claim should not be construed as a limitation.
    However, *Symantec* specifically notes that a preamble can be construed as a claim limitation when a
27  preamble term provides antecedent basis for a subsequent term in the claim.  *Id.*  Since the preambles
    of claims 13 and 23 both provide antecedent basis for the term "subscriber rental queue" recited in the
28  body of the claims, the Court finds it appropriate to construe the preamble as a limitation in this case.

11

a rental/purchase queue." '243 patent, 3:10-13.

Third, defendants contend that the claimed notification rules should be limited to rules governing the transmittal and content of notifications sent to the subscriber. Specifically, defendants assert that the scope of the claimed notification rules is not clear from the plain meaning of the claim language so that it should be construed in light of relevant descriptions in the specification and the prosecution history. Defendants rely on the descriptions of Figures 2, 3A, and 3B showing illustrative features of the claimed invention for prompting a subscriber to select a desired notification option from plural notification options. Defendants assert that the subscriber's selection of a  notification option determines how and when a notification should be sent to the subscriber as well as what should be included in the notification. '243 patent, 9:34-45. Defendants also rely on the fact that during prosecution of the '243 patent, the patent examiner described the notification rules as rules "that will notify the subscriber when the ordering of the queue has been changed by the monitoring queue." First Office Action 6, Chivvis Decl., Ex. E (Docket No. 169-6).

The Court finds that while plaintiff's construction is overly broad, defendants' construction is too narrow. Defendants correctly argue that the notification rules cannot be construed as merely "relating to" notifications sent to a subscriber and must actually govern or constrain some aspect of the notifications. Also, it is evident from the claim language and the intrinsic evidence that the notification rules are about the subscriber's queue status, and not any notification. Further,  since a notification by its plain meaning implies the transmittal or communication of information, the Court finds it appropriate to construe the term "notification rules" to at least govern the transmittal or communication of the notifications to the subscriber. However, the Court is not persuaded by defendants' argument that the intrinsic evidence requires construing the notification rules to govern the content of notifications. Although defendants point to Figures 3A and 3B of the '243 patent to demonstrate how the content of notifications can vary depending on the notification option selected by the subscriber, plaintiff correctly argues that this constitutes improperly "reading a limitation into the claim from the specification." *See Comark*, 156 F.3d at 1187; *Phillips*, 415 F.3d at1323. Therefore, the Court shall construe "a set of notification rules" to mean "a set of rules governing the transmittal of notifications about queue status sent to the subscriber."

**B.** **"A separate set of queue replenishment control rules"**

Independent claims 13 and 23 both recite a step of "monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and a separate set of queue replenishment control rules." Plaintiff proposes that "a separate set of queue replenishment control rules," in this context, be construed to mean "a set of rules (distinct from the set of notification rules) *relating to* the refilling of the subscriber's rental queue." Defendants contend that the claim term is indefinite, or in the alternative, if the claim term is amenable to construction, it should be construed to mean "a set of rules (distinct from the set of notification rules) *governing when to review* the subscriber's rental queue *and whether to automatically add media items* to the queue."

**1.** **Indefiniteness**

As discussed above, defendants' argument in support of rendering the claim terms indefinite is based on the fact that the specification of the '243 patent fails to explicitly define the boundaries of the terms "notification rules" and "replenishment control rules." However, the Court finds that reasonable efforts will enable a person of ordinary skill in the relevant art to understand the meaning of these terms, thereby rendering these terms amenable to construction.

**2.** **Claim Construction**

With regard to construction of the claim term, plaintiff argues that defendants are attempting to improperly narrow the construction of the claim term to cover only one portion of a preferred embodiment of the claimed invention that is disclosed in the specification. Defendants contend that, based on the plain meaning of the terms "replenishment," "control," and "rules," and the specification describing the options and parameters related to queue replenishment, the term "queue replenishment control rules" must be construed to govern *when* to review the rental queue and whether to *automatically add* items to the queue.

First, defendants contend that the queue replenishment control rules must govern whether to *automatically add* items to the queue. Defendants assert that the plain language of the term "queue replenishment control rules" means the rules must control the replenishment of the subscriber's queue.

13

Defendants also assert that the specification confirms that the replenishment is under the control of the computer system so that it must be performed automatically, rather than manually by the subscriber. Defendants further assert that during prosecution of the '243 patent, the patentee confirmed that he was claiming "a set of rules which automatically cause a modification to a subscriber rental queue." Amendment A and Response 9, Chivvis Decl., Ex. J (Docket No. 171-6).  Second, defendants contend that the "queue replenishment control rules" must also govern *when* to review the subscriber's rental queue in light of the claim language indicating that the computer uses the notification rules and the queue replenishment control rules to monitor the subscriber's rental queue and determine if an electronic notification should be sent to the subscriber. '243 patent 27:21-28, 27:36-39, 28:20-29.

Plaintiff argues that defendants are attempting to construe the claim language to cover only the preferred embodiments described in the specification.  Plaintiff particularly objects to defendants' proposed construction to limit "queue replenishment control rules" to rules governing whether media titles should be automatically added to the queue, and exclude rules for simply determining whether the queue is in need of replenishment and rules relating to the type of media items with which the queue may be replenished.

Again, the Court finds that while plaintiff's construction of the claim term is overly broad, defendants' construction is too narrow.  Step (b) as recited in claim 13 reads as follows:

> monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and a separate set of queue replenishment control rules authorized by the subscriber *so that said computer can determine if a composition of such rental queue should be altered through additions of playable media titles and/or ordering of playable media titles in the subscriber rental queue should be altered.*

'243 patent, 27:21-29 (emphasis added).  Step (b) as recited in claim 23 reads as follows:

> monitoring the subscriber rental queue with a computer in accordance with said set of notification rules and a separate set of queue replenishment control rules authorized by the subscriber *so that said computer can determine if a composition and/or ordering of playable media titles in the subscriber rental queue should be altered.*

*Id*. 28:20-25 (emphasis added).  Based on the claim language, it is clear that "a separate set of queue replenishment control rules" refers to a set of rules that is used by a computer to determine whether to add media titles to the subscriber queue.  As defendants point out, the term "queue replenishment" clearly implies addition, and not just alteration, of media titles.  Also, during prosecution of the '243

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

patent, the patent examiner made claim rejections based on the fact that queue replenishment rules "employed to determine if the ordering of the titles in the queue should be changed" are disclosed in the prior art Hastings patent. *See* First Office Action 6. In response, the patentee argued that "[i]n the <u>Hastings</u> system . . . titles are taken out, but there is <u>no</u> 'replenishment' shown or suggested." The patentee further asserted that his invention is distinguishable over the prior art in that it includes a feature of altering the subscriber queue "<u>through additions of playable media titles</u>." Amendment A and Response 9-10 (emphasis in original).[6]

Further, it is clear from the intrinsic evidence and the prosecution history that the asserted claims only cover *automatic* replenishment of the subscriber queues. First, the claim language clearly indicates that a computer determines "if a composition . . . and/or ordering of playable media titles in the subscriber's rental queue should be altered" based on the notification rules and the queue replenishment control rules. This language clearly implies that the computer, not the subscriber, determines whether it should automatically modify the subscriber's rental queue. '243 patent, 27:25-26, 28:24-25.[7]

Second, a non-automatic queue replenishment feature is neither taught nor suggested in the '243 patent. Any feature related to queue replenishment is described as being automatically implemented by a computer system in the specification. *See e.g.*, '243 patent, 10:28-31 (disclosing automatically replenishing a queue without burdensome participation by the subscriber), 18:36-40 (disclosing a service provider server device that includes a function for prompting a subscriber to select auto-notice/auto-replenish/auto-ship options). Also, the background of the '243 patent describes how, in the prior art system, subscribers run the risk of unwittingly leaving their queues empty and thereby not receiving media items they would otherwise be entitled to receive "unless they constantly monitor their own rental queue to make sure it is stocked with selections for shipping." '243 patent, 2:15-18. The summary of

---

[6] Although the language "through additions of playable media titles" is not included in claim 23, the Court still finds it appropriate to construe "queue replenishment" as "adding" media titles to the subscriber queue in light of the prosecution history and the plain meaning of the term "replenish."

[7] Plaintiff asserts that the queue replenishment control rules should be construed to cover rules for determining whether the subscriber's rental queue needs to be replenished (by the subscriber) and rules relating to the type or number of media items that may be added (by the subscriber). However, under such rules, the subscriber determines whether his or her queue should be altered, which is inconsistent with the claim language that specifically requires the computer to determine whether the subscriber's rental queue should be altered.

United States District Court
For the Northern District of California

the invention states that its object is "to provide a recommender system that coordinates with a queue monitoring system, so that the subscribers/purchasers can enjoy the benefits of such system even during periods when they are not actively engaged with an online rental/purchase system." '243 patent, 3:17-21. The detailed description specifies one of the advantages of the claimed invention as "automatically ensur[ing] that [the subscriber's] preference queue is never allowed to completely run 'dry' so to speak." *Id.* 5:60-62. Further, plaintiff does not refute defendants' assertion that the queue replenishment feature must be automatic and instead argues that the automatic *modification* of the subscriber queue is merely an optional feature of the claimed invention in light of the language in the specification that describes the primary advantage of the claimed invention as providing automatic *notification* to a subscriber about his/her queue status. This argument, however, struthiously ignores the fact that both claims 13 and 23 explicitly recite the term "queue replenishment control rules." Although a subscriber may choose not to benefit from the automatic queue replenishment feature, the subscriber still has to be presented with this option, and a computer must determine whether the subscriber has selected this option. In other words, the feature of determining whether to automatically replenish media titles is an essential element of the claimed invention, not merely an optional feature.

Third, the patentee confirmed during prosecution of the '243 patent that his invention was directed to techniques "in which a user can set up a set of rules which *automatically* cause a modification to a subscriber rental queue." Amendment A and Response 9 (emphasis added). Plaintiff argues that the patentee merely noted that a user "can" (but does not necessarily have to) set up rules for causing automatic modification of the subscriber queue. However, plaintiff's somewhat forced reading of the "can" language is inconsistent with the claim language explicitly reciting the term "queue replenishment control rules" and the intrinsic evidence describing the queue replenishment feature as an automatic feature implemented by a computer.

The Court notes that claim 13 recites language further requiring the queue replenishment control rules to include "a trigger event to be used in determining *when said subscriber rental queue should be modified*." '243 patent, 27:29-31 (emphasis added). However, in light of the fact that this language is not recited in claim 23, the Court finds that defendants' proposal to construe the term "queue replenishment control rules" to govern "when to review the subscriber's rental queue" is improper.

United States District Court
For the Northern District of California

Therefore, the Court shall construe "a separate set of queue replenishment control rules" to mean "a set of rules (distinct from the set of notification rules) governing whether to automatically add playable media titles to the subscriber's rental queue."

### C.      "Authorized by the subscriber"

Independent claims 13 and 23 both recite "a set of notification rules . . . authorized by the subscriber" and "a separate set of queue replenishment control rules authorized by the subscriber." '243 patent, 27:18-24, 28:17-23.  Plaintiff proposes that the term "authorized by the subscriber" in this context should simply be construed as "*permitted or sanctioned* by the user," whereas defendants propose that the term be construed more narrowly in light of the specification to mean "a subscriber's *election after being presented with a choice among multiple options*."

Defendants rely on the fact that all of the disclosed embodiments are directed to user selections that control the management of the subscriber's queue.  Defendants argue that plaintiff's construction of the claim language is so broad that it could even encompass a situation in which the subscriber is required to take no particular action to "authorize" the relevant rules.  Defendants contend that such a reading is clearly inconsistent with the specification.  On the other hand, plaintiff relies on *Howmedica Osteonics Corp. v. Wright Medical Technologies, Inc*., 540 F.3d 1337, 1345 (Fed. Cir. 2008), to argue that "the fact that the specification describes only a single embodiment, standing alone, is insufficient to limit otherwise broad claim language."  However, the Court finds that the intrinsic evidence supports construing the claim language "authorized by the subscriber" to require affirmative selection of an option by the subscriber from multiple options.  Specifically, in the background, the '243 patent mentions Netflix's rental queue system as prior art and describes one of its drawbacks as not giving subscribers "any flexible degree of control over their rental selection queue or shipments." '243 patent, 2:20-23.  The summary of the invention goes on to state its objects as overcoming the limitations of the prior art, and implementing "an intelligent queue monitoring system that allows subscribers/purchasers to define policies and rules to be used in determining what actions should be taken with respect to particular items in such queue, and at what times." '243 patent, 3:5-9.  Accordingly, the Court finds that there is sufficient intrinsic evidence to support construing the term "authorized by the subscriber" to

mean "elected by the subscriber after the subscriber is presented with a choice among multiple options."

### III.     Netflix's Motion for Summary Judgment of Noninfringement

Netflix asserts that its system does not infringe any claims of the '243 patent as a matter of law because its system does not employ "a set of notification rules" and "a separate set of queue replenishment control rules" that are "authorized by the subscriber."  Since the parties do not dispute any part of the evidentiary record, Netflix's motion for summary judgment is based on the construction of the three disputed claim terms "a set of notification rules," "a separate set of queue replenishment control rules," and "authorized by the subscriber."  Netflix asserts that to the extent these claim terms are amenable to construction, the '243 patent claims must be construed to require that "the subscriber be able to select the rules governing what notices the subscriber receives about the rental queue and whether and how the rental queue is automatically replenished."  Netflix's Mot. for Summ. Judg. 2 (Docket No. 171).  Netflix asserts that its system does not allow users to customize automatic queue replenishment or queue notification options to their individual preferences and therefore does not infringe the '243 patent as a matter of law.  On the other hand, plaintiff contends that defendants' proposed construction of the claim terms is unnecessarily narrow.  Plaintiff asserts that the '243 patent claims are directed to novel methods for providing subscribers with electronic notifications about their media title queues and that the claims are broad enough to cover the features of Netflix's system.  Plaintiff argues that there are at least genuine issues of material fact as to whether Netflix's system employs "notification rules" and "queue replenishment control rules" that are "authorized by the subscriber" as required by the '243 patent that would preclude the Court from granting Netflix's motion for summary judgment.  The Court will consider the parties' arguments based on the claim constructions set out earlier in this Order.  Specifically, the Court will construe the terms "a set of notification rules," "a separate set of queue replenishment control rules," and "authorized by the subscriber" to mean "a set of rules governing the transmittal of notifications about queue status sent to the subscriber," "a set of rules (distinct from the set of notification rules) governing whether to automatically add playable media titles to the subscriber's rental queue," and "elected by the subscriber after the subscriber is presented with a choice among multiple options," respectively.

18

**A.      Notification Rules Authorized by the Subscriber**

**1.      Netflix's Terms of Use**

Plaintiff asserts that Netflix's Terms of Use, which must be accepted by all Netflix users, include notification rules governing the transmittal and content of notifications about queue status sent to the subscriber. Specifically, plaintiff points to portions of the Terms of Use describing when and what kind of electronic notifications Netflix will send to its subscribers:

> [We] send you an email letting you know when we have received a returned movie, and we also send you another email letting you know when we have shipped your next DVD, including the anticipated date of delivery.

> By using the Netflix service, you consent to receiving electronic communications from Netflix. These communications will include notices about your account (e.g., shipping and receiving e-mails and other transactional information) and information concerning or related to our service, such as featured films or other entertainment information or offerings.

McEntee Decl., Ex. B, 3, 17 (Docket No. 171-9).

Netflix contends that these terms of use do not amount to "notification rules authorized by the subscriber" since accepting terms of service is not "authorization" when the user has no choice but to accept. Netflix asserts that "authorization" within the context of the '243 patent requires an affirmative subscriber choice from among plural options presented to the subscriber and that Netflix does not provide subscribers with a choice among multiple options. Also, Netflix points out that the portions of the Terms of Use cited by plaintiff do not specifically indicate that Netflix will send notifications "for the subscriber rental queue." Specifically, Netflix argues that subscribers are not choosing rules governing whether and how they should be notified that their rental queues are running low or could be supplemented, and they are not tailoring notifications to meet their preferences.

In light of the Court's construction of the term "authorized by the subscriber" to mean "elected by the subscriber after the subscriber is presented with a choice among multiple options," the Court finds that a subscriber's accepting Netflix's overall Terms of Use does not satisfy the "authorization" element required by the '243 patent claims. Plaintiff argues that in accepting the Terms of Use, subscribers are in fact given a choice of either opting to use Netflix's services or opting not to use Netflix's services. However, someone who chooses not to accept the Terms of Use would not be a "subscriber" of Netflix's services. Accordingly, the Court finds that a subscriber's acceptance of

19

Netflix's Terms of Use does not constitute "defining a set of notification rules for the subscriber rental queue . . . authorized by the subscriber" as recited in claims 13 and 23.

### 2. "Account Hold," "Netflix Friends – Movie Notes," and "Facebook Connect" features

Netflix's "Account Hold" feature allows a subscriber to temporarily place his or her subscription account on hold for vacation or other reasons.  Plaintiff contends that this feature constitutes the "notification rules" as recited in claims 13 and 23 because the subscriber's suspension of his or her subscription account will cause a temporarily halt on Netflix's transmittal of certain notifications, such as notifications of shipment, to the subscriber.  In other words, plaintiff asserts that in choosing to suspend his or her subscription account, the subscriber designates rules that would control Netflix's transmittal of  notifications to the subscriber.

The "Netflix Friends – Movie Notes" feature is an electronic notification option that allows the subscriber to receive email notifications about movie recommendations from friends.  Plaintiff contends that this feature is yet another example of "notification rules" governing the transmittal and content of notifications about movies a subscriber may wish to add to his or her rental queue.  Netflix also has a "Facebook Connect" feature that allows its subscribers to connect their Netflix accounts to their Facebook accounts.  By choosing this option, a subscriber can receive notifications containing information on movies rated by friends and links that allow the subscriber to add the rated movies to his or her rental queue. Plaintiff contends that this feature also constitutes "notification rules" governing the transmittal and content of notifications about movies the subscriber may wish to add to his or her rental queue.

According to the Court's construction of the claim terms, "notification rules" must govern the transmittal of notifications about the subscriber's rental queue status.  Since plaintiff has presented no evidence that the accused features of Netflix's system control notifications about the status of the subscriber's rental queue, the Court finds that none of the Netflix features relied upon by plaintiff constitute "notification rules" as recited in claims 13 and 23.

**B.**     **Queue Replenishment Control Rules Authorized by the Subscriber**

**1.**     **Netflix's User Profiles**

Netflix allows its subscribers to create up to four profiles for each subscriber account.  Plaintiff contends that the User Profiles contain a number of features that invoke queue replenishment control rules relating to the refilling of the subscriber's rental queue.  First, the User Profiles have a feature enabling a subscriber to divide DVD allotments for different profiles defined within the subscriber's account. Plaintiff contends that this allotment division feature constitutes "queue replenishment control rules" as claimed in claims 13 and 23 because the division feature controls at least the order in which titles are provided to the subscriber.  Second, the User Profile has a feature enabling a subscriber to specify maturity levels for different profiles defined within his or her account so that parents may restrict their children from adding certain material to their queue, for example.  Plaintiff contends that this maturity level setting feature is yet another example of  "queue replenishment control rules" that are used to determine whether a particular media title may be added to the subscriber rental queue.  Third, plaintiff asserts that Netflix's offer to provide Blu-ray movies to subscribers who choose to pay a premium is another example of "queue replenishment control rules" because this additional option controls whether a particular type of media may be added to the subscriber's rental queue.

According to the Court's claim construction, the "queue replenishment control rules" must govern whether to automatically add media titles to the subscriber rental queue, and plaintiff has presented no evidence that the accused features of Netflix's system allows such automated queue replenishment to occur.  Accordingly, the Court finds that Netflix's system does not employ "queue replenishment control rules" as recited in claims 13 and 23.

**2.**     **Netflix's Terms of Use**

Plaintiffs also cite portions of Netflix's Terms of Use that describe the manner in which Netflix selects titles to be shipped to subscribers based on their rental queues:

> We determine which movies to send you based on the movies in your Queue and the priority in which you have listed them.  We endeavor to ship to you the movies listed highest in your Queue; however when availability is limited we may ship you movies

1    lower on your Queue.

2    As a result of the operational practices described in this section, we may not always send
     you the top choices from your Queue, ship out your next DVD on the same day that we
3    receive one from you, or process orders from your local distribution center.

4    McEntee Decl., Ex. B, 4.  Plaintiff contends that these terms constitute "queue replenishment control

5    rules" as recited in claims 13 and 23 because these terms impact the order in which DVDs are provided

6    to the subscriber.

7         Plaintiff also points out that the Terms of Use describe how the subscriber's shipping address,

8    which is designated by the subscriber, is used  to determine the subscriber's local shipping center and

9    select media titles to be shipped to the subscriber according to the availability of media titles at the

10   subscriber's local shipping center.   Thus, plaintiff argues that these terms constitute "queue

11   replenishment control rules authorized by the subscriber" that are used to determine whether the

12   ordering of the subscriber's rental queue should be altered.

13        Claims 13 and 23 both require "authorization" of the queue replenishment control rules, and as

14   noted above, the mere acceptance of Netflix's Terms of Use does not constitute the subscriber's

15   "authorization" of the rules within the context of the claims at issue.   Moreover, the "queue

16   replenishment control rules" must govern whether to automatically add media titles to the subscriber's

17   rental queue, and the terms of use cited by plaintiff do not satisfy this requirement because they merely

18   control the modification of the queues, not automatic addition to the queues.   Therefore, the Court finds

19   that the portions of the Terms of Use cited by plaintiff do not constitute "queue replenishment control

20   rules" as recited in claims 13 and 23.

21

22                **3.    Netflix's Subscription Plans**

23        Netflix allows its subscribers to choose a subscription plan from multiple options.   The

24   subscription plan options allow a subscriber to designate  how many titles the subscriber can check out

25   at one time and/or how many titles the subscriber can receive per month, for example.  Plaintiff contends

26   that the subscription plan selected by the subscriber constitutes "queue replenishment control rules"

27   authorized by the subscriber because the selected subscription plan controls the ordering of the

28   subscriber's rental queue.

United States District Court
For the Northern District of California

As noted above, "queue replenishment control rules" within the context of claims 13 and 23 must govern whether to automatically add media titles to the subscriber's rental queue, and plaintiff has not presented any evidence that the subscription plans govern the automatic addition of media titles to the subscriber's rental queue.[8] Therefore, the Court finds that Netflix's Subscription Plans do not constitute "queue replenishment control rules" as recited in claims 13 and 23.

In conclusion, the undisputed factual records reveal that none of the accused features of Netflix's system read on the claimed features of the '243 patent so that Netflix is entitled to summary judgment on the issue of noninfringement.[9]

## VI.   Blockbuster's Motion for Summary Judgment of Noninfringement

Blockbuster maintains that its online subscription program, Blockbuster Online (registered trademark), does not infringe the '243 patent claims as a matter of law.  Blockbuster's motion for summary judgment is partially based on the construction of the three disputed claim terms, "a set of notification rules," "a separate set of queue replenishment control rules," and "authorized by the user." Blockbuster argues that under proper construction of these claim terms, it does not use "a separate set of queue replenishment control rules" that are used to "monitor the subscriber rental queue" so that it is entitled to summary judgment as a matter of law.  Blockbuster further argues that even under the claim construction asserted by plaintiff, it does not use "a set of notification rules" and "a separate set of queue replenishment control rules" to "monitor[] the subscriber rental queue," nor does it use "a

---

[8] Plaintiff relies on the patent examiner's remarks in the First and Second Office Action issued in connection with the '243 patent that describe queue replenishment control rules as governing the ordering of the rental queues to support its argument that the rules do not necessarily have to relate to the addition of media titles.  However, plaintiff's argument is unwarranted in light of the fact that the patentee specifically refuted the patent examiner's interpretation in its response.

[9] Plaintiff pointed out for the first time during oral argument that Netflix's online system provides subscribers with the option to receive "Netflix News," which contains information about the subscriber's queue status. Plaintiff argued that this feature constitutes rules governing notifications about queue status that are authorized by the subscriber.  Defendants objected to the evidence because the issue was never raised in plaintiff's briefs.  However, the Court finds it unnecessary to address this issue in light of the fact that plaintiff does not raise a triable factual dispute as to whether Netflix employs "queue replenishment control rules" as claimed in the '243 patent so that Netflix would be entitled to summary judgment regardless of whether the "Netflix News" feature constitutes "notification rules" as claimed.

1  recommender system" in connection with sending electronic notifications to subscribers as contemplated

2  by the '243 patent.  Thus, Blockbuster argues that based on the undisputed facts, it is entitled to

3  summary judgment regardless of the construction of the disputed claim terms.  Plaintiff disputes the

4  accuracy of Blockbuster's factual statements about its system and contends that there are genuine issues

5  of material fact as to whether Blockbuster uses "queue replenishment control rules," "notification rules,"

6  and "a recommender system" as required by the '243 patent.  Plaintiff also argues that Blockbuster's

7  motion is premature because Blockbuster has not provided sufficient discovery to enable plaintiff to

8  fully respond to Blockbuster's assertions.

9

10       **A.       Queue Replenishment Control Rules Authorized by the Subscriber**

11              Blockbuster asserts that its online subscription program does not allow subscribers to "authorize"

12  any "queue replenishment control rules" and does not use "queue replenishment control rules" to

13  "monitor" subscriber rental queues.  Specifically, Blockbuster asserts that the '243 patent claims require

14  queue replenishment control rules to be selected by a subscriber from among plural options to enable

15  the subscriber to customize rules governing  whether to automatically add items to the subscriber's

16  rental queue and be used to monitor the subscriber's rental queue.  Blockbuster argues that it can be

17  determined based on the undisputed facts that none of its features read on the step of "monitoring the

18  subscriber rental queue with a computer in accordance with said set of notification rules and a separate

19  set of queue replenishment control rules authorized by the subscriber" as recited in claims 13 and 23.

20  Plaintiff contends that a subscriber's selection of Blockbuster's subscription plan and a subscriber's

21  creation of his or her profile are examples that constitute authorization of queue replenishment control

22  rules as required by the '243 patent claims.

23              Specifically, Blockbuster Online has a feature similar to that of  Netflix's system for allowing

24  subscribers to select a subscription plan from multiple options.  The subscription plan determines the

25  number of movies the subscriber may check out at one time and whether to limit the number of movies

26  the subscriber can receive per month.  Plaintiff contends that the replenishment of a subscriber's queue

27  is, in part, controlled by the subscription plan selected and may affect whether a low or empty queue

28  notification is sent.  Blockbuster also allows a subscriber to create a profile in which the subscriber is

United States District Court
For the Northern District of California

presented with multiple options for setting his movie preferences, which in turn is used by Blockbuster to make movie recommendations to the subscriber.  Plaintiff contends that this feature is yet another exemplary feature of Blockbuster Online that embodies the queue replenishment control rules authorized by the subscriber as claimed in the '243 patent because the subscriber is presented with a number of options to customize rules for governing replenishment of his or her queue and these rules are used to monitor the subscriber's rental queue to make recommendations that are consistent with the subscriber's profile.

However, as noted above, "queue replenishment control rules" within the context of claims 13 and 23 must govern whether to automatically add media titles to the subscriber's rental queue, and plaintiff has not presented any evidence that Blockbuster's subscription plans govern automatic addition of media titles to the subscriber's rental queue.  Plaintiff further concedes that the options presented to the subscriber to create his or her profile do not govern whether to automatically add movies to the subscriber's rental queue.  Therefore, the Court finds that Blockbuster's subscription plan does not constitute "queue replenishment control rules" as recited in claims 13 and 23.

### B.    Notification Rules used for Monitoring the Subscriber Rental Queue

Plaintiff points to Blockbuster Online's "Update Subscription Notification Settings" feature that purportedly allows a subscriber to select or update certain notification settings, including the option to receive low or empty queue notifications.  Plaintiff contends that the notification settings constitute "notification rules" as recited in claims 13 and 23 because by selecting or updating these settings, the subscriber defines rules governing the transmittal of notifications about queue status sent to the subscriber.  Blockbuster contends that while its program appears to allow its subscribers to update or change their subscription notification settings, it no longer makes use of this feature and has not done so since no later than May 2008.[10]  Blockbuster asserts that all electronic notifications about the subscriber's queue status are currently sent to subscribers on a manual ad-hoc basis. Plaintiff challenges Blockbuster's factual assertion that electronic notifications about queue status are sent to subscribers

---

[10] The '243 patent was issued on June 17, 2008.

manually on an ad-hoc basis. Plaintiff has submitted declarations supporting its assertion that Blockbuster is in fact using notification rules controlling the transmittal of notifications about queue status to the subscriber. Plaintiff also alleges that Blockbuster has not provided sufficient discovery about its manual ad-hoc notifications to enable plaintiff to fully respond to Blockbuster's assertions. In view of this factual dispute, the Court finds that summary adjudication on the issue of whether Blockbuster's accused feature constitutes the claimed notification rules is inappropriate.

### C.   Recommender System

The Court notes that both parties agreed in their claim construction briefs that a "recommender system" in the context of claim 13 refers to a system that employs an algorithm for predicting media titles likely to be of interest to the subscriber. To support its argument that Blockbuster employs a recommender system as recited in claim 13, plaintiff points to examples of queue status notifications containing media title recommendations that were sent by Blockbuster to its subscribers. Blockbuster contends that it does not use a recommender system that employs an algorithm to predict a media title of interest to the subscriber. Instead, Blockbuster asserts that its subscribers receive a generic recommendation that is compiled by humans, not computers. Blockbuster further asserts that even though it has a third party recommender tool that provides recommendations to subscribers, that tool is not technologically connected to any low or empty queue electronic notifications sent by Blockbuster. Accordingly, Blockbuster asserts that its system does not satisfy element (e) of claim 13 that requires "causing said recommender system to interact with the subscriber and provide a playable media title recommendation in response to user input provided within a response to said electronic notification." '243 patent, 27:40-43. Plaintiff disputes Blockbuster's factual assertion that its electronic queue status notification does not cause a subscriber to interact with its recommender tool. Specifically, plaintiff contends that Blockbuster's electronic notification includes a recommendation link that can cause the subscriber to interact with Blockbuster's recommender tool by prompting the subscriber to click this link. Plaintiff also contends that Blockbuster has not provided sufficient discovery on how it generates low or empty queue notifications with recommendations to enable plaintiff to fully respond to Blockbuster's assertions. In light of these conflicting factual allegations, the Court finds that there is

26

a genuine factual dispute as to whether a recommender system as recited in claim 13 is found in the accused Blockbuster system that prevents the Court from summarily deciding this matter.

In conclusion, while the Court cannot resolve the issue of whether Blockbuster's system employs "notification rules" and "a recommender system" as recited in the '243 patent claims, the Court finds as a matter of law that Blockbuster's system does not employ "queue replenishment control rules" that are used by a computer to determine whether a media title should be automatically added as required by claims 13 and 23. To establish infringement, every limitation in a claim as construed by the Court must be in the accused product, either exactly or by a substantial equivalent. *Carroll Touch, Inc.*, 15 F.3d at 1576. Since plaintiff has failed to show that Blockbuster's online subscription system includes each and every limitation of the claims as construed by the Court, Blockbuster is entitled to summary judgment on the issue of noninfringement.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby adopts the constructions set forth above, and GRANTS defendants' motions for summary judgment. (Docket Nos. 160, 169, 171, 173).

**IT IS SO ORDERED.**

Dated: December 1, 2009

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

27