IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIA QUEUE, LLC, | No. C 09-1027 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| NETFLIX, INC., *et al.*, | |
| Defendants. | |

Defendant Netlix's motion for attorneys' fees and costs is scheduled for a hearing on April 2, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds that the matter is appropriate for resolution without oral argument, and hereby VACATES the hearing. For the reasons set forth below, the Court DENIES defendant's motion for attorneys' fees and costs.

**BACKGROUND**

On October 24, 2008, plaintiff Media Queue LLC filed this patent infringement case in the Eastern District of Oklahoma. The case was transferred to this district on February 24, 2009. In an order filed December 1, 2009, the Court construed three disputed terms contained in the patent-in-suit and granted defendants' motions for summary judgment. For two of the claim terms ("a set of notification rules" and "a separate set of queue replenishment control rules"), the Court rejected defendants' contention that the terms were indefinite, found plaintiff's constructions of these terms overly broad and that defendants' constructions were too narrow, and adopted constructions that fell somewhere between the parties' constructions. The Court construed the third claim term ("authorized by the subscriber"), in a manner similar to defendants' proposed construction. Based on the Court's

construction of disputed terms, the Court held that Netflix's system did not infringe Media Queue's patent.

Defendant Netflix now moves for a finding that this is an exceptional case and for an award of $1,035,077.19 in attorneys' fees and costs totaling $77,067.10.

## LEGAL STANDARD

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The "exceptional" characterization amounts to opprobrium: "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violated Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg. Inc. v. Dutalier Int'l Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). The determination of whether to award fees under § 285 involves a two-step process. First, the district court must determine whether the prevailing party has shown that the case is "exceptional" by clear and convincing evidence. *Forest Labs, Inc. v. Abbott Labs*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) (citations omitted). "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture*, 393 F.3d at 1381. Second, if the court finds the case exceptional, it must determine whether, as a matter of the court's discretion, an award of fees is appropriate. *Forest Labs, Inc.*, 339 F.3d at 1328.

## DISCUSSION

Netflix contends that Media Queue's pursuit of its infringement claims was in bad faith and objectively baseless because Media Queue ignored the allegedly unique features in its patent when making its infringement contentions. Netflix argues that this case is similar to *iLor, LLC v. Google, Inc.*, No. 5:07-109, 2009 WL 3367391 (E.D. Ky. Oct. 15, 2009), in which the court granted a defendant attorneys' fees and costs. In *iLor,* the court held that the plaintiff never had a reasonable belief that the defendant's product infringed its patent because the plaintiff "took the position in both its patent

2

prosecution and its portrayal of its product to the public that it had created something unique," but based its patent infringement claims on features not unique to the patent. *Id.* at *11. The court noted that the infringement question was "not close," and that the plaintiff had "not offered much in the way of its own defense." *Id.* at *4 n.2, 5.

Netflix contends that, in order to get the patent, the patentee differentiated his invention from the prior art based upon the "automatic and user-customizable" nature of the software, but that Media Queue proceeded with infringement claims in this litigation that had nothing to do with the uniqueness of the patent. Netflix also asserts that the Media Queue was made aware of flaws in its claims early on in the litigation, and that plaintiff had access to the Netflix system and to the patent's prosecution history prior to filing the lawsuit and chose to ignore both in making its infringement allegations. Netflix also asserts that because Media Queue's owner, Mr. Yar, is a patent attorney, he should have realized that the infringement claims were baseless.

Media Queue responds that its claims were grounded in a reasonable interpretation of the patent, and that the claims were brought in good faith. Media Queue has also submitted the declaration of Mr. Yar, in which he states that prior to Media Queue's purchase of the patent-in-suit, he conducted over a month of due diligence during which he reviewed the prosecution history of the patent as well as several documents that Mr. Gross (the inventor of the patent) provided that related to his prior interactions with Netflix concerning an aborted sale of the patent (and other related applications) to the Netflix. Yar Decl. ¶ 5. Mr. Yar states that he prepared infringement claims charts for the patent-in-suit that compared certain claims to features of defendants' accused systems, and that he used claim constructions "that were consistent to positions taken by Mr. Gross with the USPTO and positions that the examiner had taken." *Id*. ¶ 6. Media Queue notes that the Court rejected Netflix's arguments that two of the claims were indefinite, as well as the Court's rejection of two of defendants' proposed constructions as too narrow.

On this record, the Court finds that Netflix has not met its high burden to show by clear and convincing evidence that Media Queue's claims were brought in bad faith or that the claims were objectively baseless. "There is a presumption that the assertion of an infringement of a newly granted patent is made in good faith." *Brooks Furniture*, 393 F.3d at 1382. Media Queue has submitted

evidence showing that it "engaged in a serious effort to evaluate the likelihood of success on its patent claims." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1380 (Fed. Cir. 2008) (finding patentee's pre-filing investigation, licensing discussions and product testing overcame disavowed representations made to the PTO such that the litigation was not objectively baseless). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation should have known, was baseless." *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004). While Netflix put Media Queue on early notice of its arguments about why Netflix's system did not infringe Media Queue's patent, the fact that the Court's claim construction ultimately resulted in a finding of non-infringement does not make Media Queue's claim retroactively baseless. "Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith." *Brooks Furniture*, 393 F.3d at 1384.[1]

### CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendant Netflix's motion for attorneys' fees and costs. (Doc. No. 212).

**IT IS SO ORDERED.**

Dated: March 31 , 2010

SUSAN ILLSTON
United States District Judge

---

[1] Netflix also asserts that Media Queue's original choice of forum illustrates bad faith. While the Court agrees that there was little reason for bringing suit in the Eastern District if Oklahoma, the choice of a an improper forum does not establish vexatiousness sufficient to award fees and costs.

4